Jenney Electric Co. *v.* Branham.

---

## JENNEY ELECTRIC CO. *v.* BRANHAM.

[No. 17,193. Filed Sept. 24, 1895. Rehearing denied June 11, 1896.]

APPEAL AND ERROR.—*Evidence.*—The admission of evidence, which was not objectionable for the reasons urged against it, will not be ground for reversal, even though the reasons urged for its admission may be erroneous.

PLEADING.—*Common Count. — Recovery. — Evidence. — Contract. —* Plaintiff may plead the common count and recover, notwithstanding the evidence discloses a special contract.

Jenney Electric Co. *v.* Branham.

EVIDENCE—*Admissibility of in an Action for Quantum Meruit.*—In an action on the *quantum meruit* in a suit for value of services in effecting a sale of electrical machinery it was not error to permit the plaintiff to testify that defendant's president stated to him that the company paid from ten to fifteen per cent. commission for that kind of work.

SAME.—*Expert Witness.—Qualification Of.—Practice.— Discretion of Court.*—The question as to the qualification of a witness to testify as an expert is for the trial court, in the exercise of a sound discretion, and that when there is some evidence of such qualification and the trial court has not abused that discretion, this court will not review the action.

SAME.—*Opinion Evidence.—Expert Testimony.*—Non-experts, who are shown to be familiar with the extent and character of the particular services rendered, may properly give their opinion of the value of that service.

INSTRUCTION TO JURY.—*Agent's Commission.*—In an action on the *quantum meruit* for commission in the sale of goods an instruction that if the jury should find from a preponderance of the evidence in favor of the plaintiff they should assess such reasonable compensation as they should determine from a preponderance of the evidence he should receive for the services performed, is not erroneous where the evidence showed that the sale was made to another and different party than as alleged in the complaint.

SAME.—*Credibility of Witnesses.*—It is not error to instruct a jury that in determining the credibility of witnesses the jurors may take into account their experience and relations among men.

From the Marion Superior Court. *Affirmed.*

*Miller, Winter & Elam,* for appellant.

*Hawkins & Smith,* for appellee.

HACKNEY, J.—The appellee sued the appellant for the reasonable value of services, rendered by agreement, in effecting a sale of electrical machinery. Upon the trial the appellee, as a witness in his own behalf, was permitted, over the appellant's objection, to testify that the appellant's president had stated to him that the company "paid from ten to fifteen per cent. for that kind of work." There was, upon the entire evidence of the appellee, a conflict as to whether the alleged statement was a part of the conversation constituting the employment, or in a sub-

sequent conversation. However, the appellee now in-
sists, and the cross-examination confirms his view,
that the alleged statement was a part of the conver-
sation constituting the employment. A further part
of the conversation, as testified by the appellee, is as
follows:

"I said to Mr. Rorison, I have a party who is going
into the electric light business, it is a pretty big thing,
and I want to know whether your people would take
hold of a thing of that kind. I gave him some idea
of what the plant would be, and I told him that I
knew the people were able to handle it if they would
go into it. He said, 'Yes, they were in for anything.'
Now I said, Mr. Rorison, if this thing is a success I
want the usual commission, that is what I am after.'
He said, 'All right.' I went on and told him where
the plant was," etc.

Thus it will be seen that the evidence tended to
support a contract, not only for the performance of
the service and the payment of "the usual commis-
sion," but also specifying the rate of that commission
as at "from ten to fifteen per cent."

The appellant insists that the action, being for the
*quantum meruit,* permitted no evidence of a contract
as to the value of the services rendered.

The appellee's contention is that the evidence was
admissible to prove the knowledge of the witness as
to the rate of commission paid for such services, and
as qualifying him to testify as to the value of such
services. If the evidence was not objectionable for
the reason urged against it, we are not at liberty to
hold its admission to have been erroneous, though the
reason for its admission, given by the appellee, may be
incorrect.

While the rule that one may plead the common
count and recover, notwithstanding the evidence dis-

closed a special contract, would, upon first impression, seem to be at variance with the ordinary rules of pleading and practice, yet it has been repeatedly held that under our code such recovery may be had. *Scott* v. *Congdon*, 106 Ind. 268; *Shilling* v. *Templeton*, 66 Ind. 585; *Brown* v. *Perry*, 14 Ind. 32; *Kerstetter* v. *Raymond*, 10 Ind. 199.

In *Scott* v. *Congdon, supra*, it was held that evidence of an agreement that for the work done the plaintiff should receive a sum stated, was "clearly competent, as tending to show the value of the work and labor done." Upon the theory of that holding it was certainly proper to admit the appellant's statements, of the commissions usually paid by it, as evidence of the value of the appellee's services for which, as he testified, he was to receive the "usual commission." However, we think that the question of the admissibility of the evidence as a part of the contract is not presented. At the time the court passed upon the objection of the appellant the witness had testified that the conversation with reference to the usual commission paid by the company was subsequent to the conversation in which the employment was made. It was upon cross-examination that the witness stated the time as that of the making of the employment. No motion to strike out the evidence so objected to followed, and the court was not asked to pass upon the question in the light in which the cross-examination placed it. In our opinion, the evidence was not objectionable for the reasons pointed out to the trial court and repeated in this court.

It is further complained that, while the appellee was a witness in his own behalf, he was permitted, over the objection and exception of the appellant, to testify as to his opinion of the value of his services in the matter of said sale. It was claimed by appellant's

learned counsel, in the trial court, as it is in this court, that the services for which recovery was sought were of a professional character, and so far involved special training and skill, that their value should be proven only by witnesses who might be shown to possess such training and skill as to enable them to testify as experts, or to have possessed particular acquaintance with the usage of those engaged in performing or employing that special line of services, as to the commissions paid and received. It was not shown that the appellee had an acquaintance with that usage; but he had testified as to all that he did in connection with said sale, and as to the conclusion of the negotiations in which he participated. It is conceded by counsel for appellee that the value of such service necessarily called for opinion evidence, but it is denied that such opinions should, necessarily, have been those of experts, or those familiar with the custom or usage in the matter of commissions in that special line of service. While we have no doubt that the value of such service was the subject of proof by expert testimony, yet we are equally well satisfied that non-experts, who are shown to be familiar with the extent and character of the particular service, may properly give their opinion of the value of that service. *Louisville, etc., R. W. Co.* v. *Berkey, Admr.*, 136 Ind. 181; *The City of Lafayette* v. *Nagle*, 113 Ind. 425; *Carthage Turnpike Co.* v. *Andrews*, 102 Ind. 138; *Bennett* v. *Meehan*, 83 Ind. 566 ; *Smith et al.* v. *Indianapolis, etc., R. R. Co.* 80 Ind. 233 ; *Colee* v. *The State*, 75 Ind. 511; *Holten* v. *Board, etc.*, 55 Ind. 194 ; *City of Indianapolis* v. *Huffer*, 30 Ind. 235; *Doe* v. *Reagan*, 5 Blackf. 217. See also 33 L. R. A. 395.

These cases do not include the long line of decisions in this State, holding that where mental capacity is in issue and, though involving a question of the high-

est order of skill and learning, that non-experts, who have shown an acquaintance with the person under inquest, may give their opinions as to capacity. As illustrated in many of the cases the value of an opinion, whether expert or non-expert, must depend upon the extent of knowledge and the degree of skill of the witness, but the question of the value of the opinion is not one of law for the court, but is one of fact for the jury in giving weight to the evidence.

In *City of Indianapolis* v. *Huffer, supra,* it was said: "The action of the court below in allowing witnesses, not experts, to give their opinion as to the capacity of the sewer is questioned. The rule is that any witness, not an expert, who knows the facts personally, may give an opinion in a matter requiring skill, stating also the facts upon which he bases that opinion." The rule so stated has been quoted with approval in most of the great variety of cases we have cited.

In *Bennett* v. *Meehan, supra,* it was said that "It has long been the rule in this State, that a witness who is familiar with the facts, and who states them to the jury, may express an opinion, although he is not an expert, if the case is one in which it is proper to express an opinion." Though never having engaged in a like service, the appellee was shown to be a man of extended business experience; that he was employed for this special service by the appellant, and performed the service for which he was so employed.

Another witness, called in behalf of the appellee, testified that for two years he had engaged in selling electric lighting apparatus for the establishment of electric lighting plants in cities and towns, and that he was acquainted with the value of services such as the appellee had performed. Several of the questions eliciting such testimony were answered over the objection and exception of the appellant, and, following

such testimony, the witness testified, without objec-
tion or exception, in answer to a question by appel-
lee's counsel, that the value of such service was ten
per cent. It is now insisted for the appellant "that
his examination fell far short of showing that he was
competent to express an opinion as to the value of
plaintiff's services." No objections are here urged to
the rulings upon the preliminary questions eliciting
the testimony of the qualifications of the witness to
testify as an expert to the value of appellee's services.
It will be seen, therefore, that no question, as to the
evidence of this witness, is before the court. How-
ever, it may be said that it is now settled in this
State that the question as to the qualification of a wit-
ness to testify as an expert is for the trial court, in
the exercise of a sound discretion, and that when
there is some evidence of that qualification, and the
trial court has not abused that discretion, this court
will not review the action. *Davis* v. *State*, 35 Ind. 496;
*Forgey et al.* v. *First Nat. Bank, etc.*, 66 Ind. 123; *City
of Ft. Wayne* v. *Coombs*, 107 Ind. 75.

The third of the court's charges to the jury was that
if they should find from a preponderance of the evi-
dence in favor of the plaintiff they should assess such
reasonable compensation as they should determine,
from a preponderance of the evidence, he should re-
ceive for the services performed. It is complained
that the charge was not applicable to the evidence,
that the complaint alleged a sale to Sutter, and the
evidence showed a sale to another. The charge does
not assume that the contingency claimed did not ex-
ist, but it directed the assessment of damages in the
event of a finding for the plaintiff. The fourth charge
was as follows: "If you find, from a fair preponder-
ance of the evidence, that the defendant, Brainard
Rorison, was agent of the defendant, the Jenny Elec-

tric Company, and within the line and scope of his
agency and employment he made a contract of em-
ployment with the plaintiff to introduce the parties to
the Jenney Electric Company, to the end that they
might sell to said parties, described in the plaintiff's
complaint, certain machinery and appliances for an
electric light plant, and, in pursuance of said employ-
ment, he did introduce said parties to the said Jenney
Electric Company, and, as a result of the plaintiff's
service, in pursuance of said contract, the Jenney Elec-
tric Company sold said electric plant, as described in
the complaint, then your finding should be for the
plaintiff; but, if you find, from a fair preponderance of
the evidence, that such contract was made between the
defendant, Brainard Rorison, and the plaintiff, if said
Rorison was not the authorized agent of said com-
pany, and was not, at said time, acting within the line
and scope of his authority as such agent, the Jenney
Electric Company would not be bound by any con-
tract made by him in the premises, unless the same
was confirmed and accepted afterwards, when knowl-
edge of said contract came to them, or, without formal
acceptance, of the same, when full knowledge of the
same came to them, they acted upon it and accepted
it, and accepted the benefits under it." The objec-
tion urged against this instruction is that it was not
responsive to any issue raised by the pleadings or the
evidence.   Though this objection may be true, it is
manifest that the substantial rights of the appellant
were not impaired by the charge, since its only effect
would be to require that the plaintiff should discharge
a burden not resting upon him and in no way essential
to his recovery.   No phase of the charge required
more from the defense to defeat the plaintiff's cause
of action or to diminish the amount of recovery, and.

certainly it was not calculated to prejudice the jury against the appellant or its defense.

The fifth charge was as follows: "You are the exclusive judges of the credibility of the witnesses, and it is your duty to reconcile any conflict that may appear in the evidence, as far as may be in your power, upon the theory that each witness has sworn to the truth; when this cannot be done, you may consider the conduct of the witness upon the stand; the nature of the evidence given by them; how far they are corroborated or contradicted by other testimony; their interest, if any, in the cause; their relation to the parties; and such other facts appearing in the evidence as will, in your judgment, aid you in determining whom you will believe, *and you may also, in considering whom you will or will not believe, take into account your experience and relations among men.*

The objection to this charge is confined to the last direction thereof, that which we have italicized. By this, it is claimed the jurors were advised that it was proper for them to employ any of their particular experiences and relations among men out of court, in determining the rights of the parties. It is argued that such a rule would permit the disposition of a cause upon the whims of jurors, rather than upon the law and the evidence as they were learned in the trial.

Jurors should be, and as a rule are, selected because of their extensive experiences among men. The school of experience which men attend, in their varied relations among men, imparts a keenness of mental vision which enables them the more readily to see the motives and to judge of the selfish or unselfish interests of men. This education, be it much or little, is a part of the juror, and should not, if possible, be laid aside in passing upon the inducements, which

may surround a witness, to speak falsely. It is this education which, to a great extent, enables a juror to discover in the faltering manner or the downcast eye whether the statement of the witness is made in modesty or in the guilt of falsehood. The value of experience is not to be given up when the man becomes a juror and is required to apply the tests of credit to the heart and mind of the witness; but whatever qualification that experience gives should be employed to the end that the whole truth may be known and acted upon. *State* v. *Gaymon*, 31 L. R. A. 489, and note. While, as we understand the charge, it did not tell the jurors that they should employ it, they were told that it was proper to employ it. Not, as counsel for appellant contend, as allowing a juror to bring forward some special experience or some special business transaction within his observation, bearing some similarity to the question on trial, and which had miscarried, and to conclude therefore that some phase of the present case should miscarry. The instruction was confined to the tests of credit, and the weight of the evidence of the witnesses and the clause in question was to be construed with reference alone to its bearing upon those tests. The case of *Densmore* v. *State*, 67 Ind. 306, is not in conflict with this charge. There the court, after suggesting the tests known to the law, said "that what is commonly called common sense is, perhaps, the jurors' best guide in these particulars." Judge Worden said: "Now, while common sense is a very desirable and admirable quality in man, and exceedingly useful in all of the practical affairs of life, including the duties of jurors, we do not see how it can be a better guide to them in the discharge of those duties than the rules of law." It will be seen that the instruction was regarded as directing the employment of common sense, not only

as a better guide than the rules of law, but as a substitute for such rules.

In our opinion there was no error in the charge.

Finally, it is insisted that the verdict was not sustained by the evidence. There was evidence which, if uncontradicted, would have supported the verdict. The weight and effect of the contradictions and the evidence upon conflicting theories of the case were questions for the jury, and are not subject to review.

The judgment is affirmed.